# United States Court of Appeals for the Federal Circuit

---

**KIMBERLY A. FORD-CLIFTON,**
*Petitioner,*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent.*

---

2011-3103

---

Petition for review of the Merit Systems Protection Board in consolidated case Nos. CH0752090381-C-1 and CH0752090381-I-1.

---

Decided: October 19, 2011

---

KIMBERLY A. FORD-CLIFTON, of Chicago, Illinois, pro se.

J. HUNTER BENNETT, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and REGINALD T. BLADES, JR., Assistant Director.

---

Before RADER, *Chief Judge*, O'MALLEY, and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge*.

Petitioner, Kimberly A. Ford-Clifton, seeks review of a January 26, 2011 final determination of the Merit Systems Protection Board ("the Board") that: (1) dismissed as untimely her petition for review of the decision issued March 26, 2009; and (2) affirmed the initial decision of the administrative judge ("AJ") dismissing her November 9, 2009 appeal. *See Ford-Clifton v. Dep't of Veterans Affairs*, MSPB Docket Nos. CH0752090381-C-1 and CH0752090381-I-1 (Jan. 26, 2011). We *affirm*.

## I. Background

On January 23, 2009, the Department of Veterans Affairs ("DVA") removed Petitioner from her position as a Program Support Assistant in Chicago, Illinois. Petitioner had previously been employed by the federal government for nearly thirty years, mostly with the DVA. In a letter to the Board dated October 11, 2010, Petitioner claimed that "stressful encounters with my department began in May of 2008 and were ongoing until my discharge in 2009." A30.

During the period leading up to her removal, Petitioner had documented mental and physical challenges. Specifically, on August 12, 2008, she admitted herself to the emergency room complaining of stress and feelings of helplessness. She was discharged with a diagnosis of depression and high blood pressure. Petitioner again sought medical attention on September 5, 2008, and was prescribed Effexor to treat her depression.

Following her removal from the DVA in early 2009, Petitioner timely appealed. Shortly thereafter, on March 19, 2009, the parties entered into a settlement agreement

("the Agreement") wherein the Petitioner agreed to voluntarily withdraw her appeal and forego all claims against the DVA arising before that date. The Agreement sought to fully resolve the matter, providing in pertinent part that:

> Appellant . . . will withdraw any actions Appellant has pending against the DVA . . . and . . . waive any and all actions, claims, complaints, grievances, appeals and proceedings of whatever nature in any forum, actual or potential, which relate to or concern any conduct or act occurring prior to the execution of this Agreement.

A7.

The parties notified the Board that they had settled. The AJ found that the Agreement appeared lawful on its face, was entered into freely by both parties, and represented a full and complete settlement of all issues. With no matters remaining for adjudication, the AJ dismissed the appeal as settled on March 26, 2009, entering the Agreement into the record for enforcement purposes. The AJ's initial decision became final on April 30, 2009, as clearly indicated:

> This initial decision will become final on ***April 30, 2009***, unless a petition for review is filed by that date or the Board reopens the case on its own motion. This is an important date because it is usually the last day on which you can file a petition for review with the Board. . . . These instructions are important because if you wish to file a petition, you must file it within the proper time period.

A17 (emphasis in original). No petition for review was timely filed.

On November 9, 2009, Petitioner filed a new appeal seeking to be placed in her former position at the DVA. The basis for this second appeal, however, was unclear. The appeal was docketed as a petition to enforce the Agreement, but Petitioner did not allege that the DVA failed to comply with its terms. Instead, the new appeal reargued the merits of the removal.

On March 19, 2010, the AJ issued an initial decision dismissing the appeal on three grounds: (1) if the new appeal was intended to enforce the Agreement, then dismissal without prejudice was appropriate because Petitioner did not claim that the DVA was not in compliance; (2) if the new appeal was to relitigate the merits of the removal itself, then dismissal was appropriate because the Petitioner's subsequent claims were barred under principles of *res judicata* given the express resolution of all issues by the Agreement and the entry of final judgment; and (3) if the appeal was claiming that the Agreement was illegal or improperly entered, those allegations should have been filed at the Board's headquarters as a petition for review.[1]

On April 17, 2010, Petitioner filed a petition for review with the Board headquarters, indicating the docket number and finality date of the AJ's recent dismissal. As a petition to review the March 19, 2010 dismissal, the request was timely. But the Clerk of the Board deemed that the April 17, 2010 filing could also be construed as a petition for review of the original March 26, 2009 decision that dismissed the case in the first instance, making the filing almost a year late. The Clerk of the Board re-

---

[1] In a footnote addressing the final point, the AJ indicated that because it was unclear whether Petitioner intended the appeal to be a petition for review, he did not refer it to the Board headquarters for consideration. A24 n4.

quested additional materials from Petitioner to support a showing of good cause for her untimely filing. Petitioner subsequently filed a motion to waive the time limit, attaching supporting documentation.

The Board, unable to determine the basis for the April 17, 2010 petition, ruled against Petitioner as to both possibilities. *See Ford-Clifton v. Dep't of Veterans Affairs*, MSPB Docket Nos. CH0752090381-C-1 and CH0752090381-I-1, at 1-2 (Jan. 26, 2011).

First, the Board found that "[t]o the extent the appellant means to challenge the March 26, 2009 initial decision, we dismiss her petition for review as untimely filed without a showing of good cause for the delay in filing." *Id*. at 2. At over eleven months, the Board found that the period of filing delay in this case was "significant." *Id*. at 5. To establish that such a significant delay was the result of illness, Petitioner submitted evidence of her hospital visits for depression in August and September of 2008, as well as documentation suggesting that she took Coumadin to treat deep vein thrombosis as late as November of 2009. Assessing this medical evidence, the Board determined that Petitioner's 2008 depression treatment pre-dated the relevant period of delay and did not support a showing of good cause. As the Board explained: "Absent from the record . . . is any evidence that the appellant suffered from depression during the period between the issuance of the initial decision on March 26, 2009, and the filing of the petition for review . . . ." *Id*. at 6. As for her Coumadin therapy for blood clots which occurred during the relevant timeframe, the Board found that Petitioner "ha[d] not explained how that medical condition would have impaired her ability to file a timely petition for review or request an extension of the time to file." *Id*. The Board also considered, but rejected, Petitioner's claim that financial hardship and *pro se* status

justified the delay. *Id.* As such, the Board found that Petitioner failed to show good cause for the lengthy filing delay and dismissed the new appeal to the extent it sought untimely review of the March 26, 2009 initial decision. *Id.* at 6-7.

Second, the Board determined that "[i]nsofar as the appellant is petitioning for review of the March 19, 2010 initial decision, . . . we conclude that there is no new, previously unavailable, evidence and that the administrative judge made no error in law or regulation that affects the outcome." *Id.* at 7. Accordingly, the Board denied the petition for review, but reopened the appeal on its own initiative to clarify the grounds for its holding. The Board decided that the AJ improperly identified *res judicata* as the basis for the March 19, 2010 dismissal of Petitioner's second appeal. The Board stated that, "[w]hen the merits of an agency action are not examined . . . the doctrine of *res judicata* is inapplicable." *Id.* The Board held instead that "the law of the case doctrine" prevented the appellant from relitigating her original removal claim, which was fully resolved by the Agreement. *Id.* at 8. Hence, the Board affirmed the dismissal of March 19, 2010, but on the basis of the law of the case doctrine. *Id.* at 7-8. Petitioner timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II. Discussion

Because the Board dismissed on two separate grounds, we address each in turn. We affirm a decision of the Board unless it is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c).

### A. Good Cause Was Not Shown

To demonstrate on appeal that the Board abused its discretion in not waiving the filing deadline for a petition for review, Petitioner bears a "heavy burden." *Zamot v. Merit Sys. Prot. Bd.*, 332 F.3d 1374, 1377 (Fed. Cir. 2003). The Board is afforded considerable discretion in such analyses. *Id.*; *Mendoza v. Merit Sys. Prot. Bd.*, 966 F.2d 650, 653 (Fed. Cir. 1992) (en banc) ("[W]hether the regulatory time limit for an appeal should be waived based upon a showing of good cause is a matter committed to the Board's discretion and this court will not substitute its own judgment for that of the Board.").

Board regulations require petitioners to file "[a] specific and detailed description of the circumstances causing the late filing, accompanied by supporting documentation or other evidence." 5 C.F.R. § 1201.114(f)(2). The Board has held that when petitioners allege delay for medical reasons, they must affirmatively identify medical evidence that addresses the entire period of delay and explain how the illness prevented a timely filing. *Jerusalem v. Dep't of the Air Force*, 107 M.S.P.R. 660, 663, *aff'd*, 280 F. App'x 973 (Fed. Cir. 2008); *see also Lacy v. Dep't of the Navy*, 78 M.S.P.R. 434, 437 (1998).

The Board's determination that Petitioner's medical evidence failed to show good cause based on illness was reasonable and supported by substantial evidence. Petitioner contends that the delay was the result of depression and deep vein thrombosis, but did not provide evidence of a medical condition that prevented a timely filing between April 30, 2009 and April 17, 2010—the entire period of delay. The record evidence describing Petitioner's depression is limited to episodes occurring in mid-2008, many months prior to the relevant period. The only medical evidence actually dated from within the

period of delay was for deep vein thrombosis; but, as the Board properly found, there is no accompanying explanation of how this condition prevented a timely filing.

Nor did the Board err in rejecting the other non-medical excuses raised. Relying upon established precedent, the Board properly held that neither alleged financial hardship nor inability to engage counsel establish good cause for delay. *See Uson v. Office of Pers. Mgmt.*, 105 M.S.P.R. 402, 403, *aff'd*, 250 F. App'x 326 (Fed. Cir. 2007); *Melville v. Dep't of the Air Force*, 99 M.S.P.R. 233, 234 (2005). We therefore affirm the Board's determination that good cause was not shown to excuse Petitioner's filing delay of more than eleven months.

### B. The Agreement Requires Dismissal

The Board found error in applying *res judicata* to dismiss Petitioner's November 9, 2009 appeal because the AJ had not examined the underlying merits of the DVA removal in his prior decision. Rather, the Board held that the legal doctrine preventing Petitioner's new appeal was "the law of the case doctrine." Under this doctrine, "[i]ssues decided at an earlier stage of litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case." *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 657 (Fed. Cir. 1985) (citation omitted). The Board dismissed Petitioner's second appeal based on this doctrine, relying on the terms of the Agreement.

We affirm the Board's final decision dismissing the November 9, 2009 appeal, but we find that the law of the case doctrine is not the correct analysis to employ here. The Board has sometimes refused to apply *res judicata* where a prior dispute was dismissed pursuant to settlement agreement, maintaining that such resolutions do not reach the merits and cannot have preclusive effect.

*See Vargo v. USPS*, 62 M.S.P.R. 156, 159 (1994). The Board has relied instead on the law of the case doctrine to prevent relitigation of settled matters. *Id*. As explained below, we look with disfavor on the use of the law of the case doctrine by administrative agencies when a final order dismissing a case was earlier made on the basis of a settlement agreement.[2] In such circumstances, a subsequent appeal is barred by *res judicata*.

Pursuant to the doctrine of *res judicata*, a final judgment on the merits bars a second action involving the same parties and the same claim. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979); *Carson v. Dep't of Energy*, 398 F.3d 1369, 1374-75 (Fed. Cir. 2005); *see also Wade v. Dep't of the Air Force*, 70 M.S.P.R. 396, 399 (1996), *aff'd*, 104 F.3d 375 (Fed. Cir. 1996). It is widely agreed that an earlier dismissal based on a settlement agreement constitutes a final judgment on the merits in a *res judicata* analysis. *See Epic Metals Corp. v. H.H. Robertson Co.*, 870 F.2d 1574, 1576 (Fed. Cir. 1989), *cert.*

---

[2] Some appellate courts have questioned whether the law of the case doctrine is available to agencies at all. *See, e.g.*, *Biltmore Forest Broad. FM, Inc. v. Fed. Commc'ns Comm'n*, 321 F.3d 155, 163 (D.C. Cir. 2003) ("For the record, we note also that the law of the case doctrine is of uncertain force in the context of administrative litigation."); *Lockert v. Dep't of Labor*, 867 F.2d 513, 518 (9th Cir. 1989) ("[I]t is doubtful that federal courts have the authority to extend the law of the case doctrine to proceedings involving non-judicial decisionmakers, such as the ALJ and the Secretary. Law of the case doctrine is purely judge made; in the absence of statutory guidance, it makes sense for judges to develop doctrines to help manage efficiently their own affairs. The basis for extending this doctrine beyond 'judicial affairs,' however, is far from certain."); *see also Bath Iron Works v. Brown*, 194 F.3d 1, 4 n.3 (1st Cir. 1999) (citing *Lockert*, 867 F.2d at 517-18).

*denied*, 493 U.S. 855 (1989) (construing Third Circuit law and stating that under "principles of *res judicata* . . . consent judgments have the same force and effect as judgments entered after a trial on the merits"); *see also Larken, Inc. v. Wray*, 189 F.3d 729, 732 (8th Cir. 1999) ("When the parties to a previous lawsuit agree to dismiss a claim with prejudice, such a dismissal constitutes a 'final judgment on the merits' for purposes of *res judicata*."); *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995) ("A voluntary dismissal with prejudice is an adjudication on the merits for purposes of *res judicata*."); *Langton v. Hogan*, 71 F.3d 930, 935 (1st Cir. 1995) ("A judgment that is entered with prejudice under the terms of a settlement, whether by stipulated dismissal, a consent judgment, or a confession of judgment, is not subject to collateral attack by a party or a person in privity, and it bars a second suit on the same claim or cause of action."). For *res judicata* purposes, therefore, consent judgments entered pursuant to settlement agreements have the same effect as judgments after a trial on the merits. *Hallco Mfg. Co. v. Foster*, 256 F.3d 1290, 1294-95 (Fed. Cir. 2001); *see also Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d 1227, 1230 (Fed. Cir. 2006) ("A dismissal with prejudice is a judgment on the merits for purposes of claim preclusion.").

The record establishes that the Agreement was lawful and "a full and complete settlement of all issues in the appeal." A17. The AJ entered it into the record, dismissing the case on March 26, 2009. That decision became final April 30, 2009. Upon Petitioner's subsequent appeal, the AJ confronted the same parties and the same claims as in the original suit, namely, Ms. Ford-Clifton challenging her January 23, 2009 removal by the DVA. Since the AJ's earlier dismissal based on the Agreement resolved all issues regarding Petitioner's removal, that

decision is a final judgment on the merits for *res judicata* purposes. *Hallco*, 256 F.3d at 1294-95. The AJ thus properly found the second appeal barred by *res judicata*, and dismissal was appropriate on that ground. *See Sullivan v. Dep't of Justice*, 282 F. App'x 828, 830 (Fed. Cir. 2008) (affirming dismissal on *res judicata* grounds because the "petition arose from the same event Mr. Sullivan previously challenged and eventually settled . . . ."); *cf. Fletcher v. USPS*, No. SF-0353-08-0383-I-1, 2008 MSPB LEXIS 3404, at *4, *rev. denied*, 110 M.S.P.R. 151 (2008) ("It is well-settled that, where a party requests a voluntary dismissal of his appeal with an affirmative expression of the intent to abandon the appeal, the dismissal will be considered to be 'with prejudice.' Under such circumstances, the dismissal is considered final, and relitigation of such appeal is barred by *res judicata*.").

We also believe that the AJ's dismissal, in addition to *res judicata*, could be characterized in terms of waiver. *See Mannion v. Dep't of Treasury*, No. 2011-3089, 2011 U.S. App. LEXIS 14215, at *2-6 (Fed. Cir. July 11, 2011) (affirming the Board's decision that the petitioner could not reinstate or reopen her appeal because she entered into a settlement agreement wherein she voluntarily waived "any and all rights to file, pursue or litigate in any forum, including . . . the MSPB . . . any and all" of her claims). By the Agreement's express terms, Petitioner withdrew any pending action and waived all additional claims, grievances, and proceedings arising from her DVA removal. Since the March 26, 2009 decision was based on the Agreement, which fully and completely resolved this matter, we affirm the Board's determination on this ground as well.

### III. Conclusion

Because Petitioner failed to show good cause for her untimely filing of the November 9, 2009 appeal and because the March 26, 2009 decision implementing the Agreement operates as a *res judicata* bar, we affirm.

### **AFFIRMED**

COSTS

No costs.