NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GARY R. AMASON,**
*Petitioner*

**v.**

**UNITED STATES POSTAL SERVICE,**
*Respondent*

---

2021-1800

---

Petition for review of the Merit Systems Protection Board in No. DA-0752-19-0523-I-2.

---

Decided:  April 2, 2024

---

JAMES M. ANDERSEN, Houston, TX, for petitioner.

AUGUSTUS JEFFREY GOLDEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by REGINALD THOMAS BLADES, JR., BRIAN M. BOYNTON, PATRICIA M. MCCARTHY.

---

Before LOURIE, CHEN, and CUNNINGHAM, *Circuit Judges.*

PER CURIAM.

Gary R. Amason petitions for review of a Merit Systems Protection Board ("Board") decision affirming the United States Postal Service's reduction of his grade and pay. *Amason v. U.S. Postal Serv.*, No. DA-0752-19-0523-I-2, 2021 WL 533568 (M.S.P.B. Feb. 8, 2021) ("*Decision*") (J.A. 1–28).[1]  We *affirm*.

## I.    BACKGROUND

Mr. Amason was employed with the United States Postal Service ("Postal Service") as an EAS 21 Postmaster at the Webster Post Office ("WPO") in Webster, Texas. *Decision* at 2; J.A. 36.  Postmasters are responsible for overseeing the daily operations of a post office, including the timely delivery of mail. *Decision* at 2; J.A. 36; J.A. 182–83.

In November 2018, the Postal Service Office of Inspector General ("OIG") investigated WPO's scanning procedures, revealing that over 1,000 packages were improperly scanned as delivered in September 2018 when the packages actually remained within the WPO. *Decision* at 2; J.A. 169–70.

In February 2019, based on a management referral from the OIG, Manager of Post Office Operations Sunny Sunny also investigated the improper scans. *Decision* at 2; J.A. 172–73.  Based on the results of his investigation, on April 10, 2019, Mr. Sunny issued a notice of proposed reduction in grade and pay to Mr. Amason based on "unacceptable conduct" of instructing staff to make inappropriate scans of packages or misrepresent the status of packages, indicating they had been delivered or

---

[1]    Because the reported version of the Board's decision is not paginated, citations in this opinion are to the version of the Board's decision included in the Joint Appendix.  For example, *Decision* at 1 is found at J.A. 1.

available for pickup when they were not. *Decision* at 2–3; J.A. 36. The letter proposed a reduction in grade and pay from Postmaster, EAS 21 with a salary of $93,461.00, to Supervisor, EAS 17 with a salary of $81,234.00. J.A. 38. The letter also explained that Mr. Amason's actions violated the Postal Service's rules and regulations, quoting multiple provisions of the Employee and Labor Relations Manual. J.A. 38.

On August 29, 2019, Deciding Official Myron Kelly issued a letter of decision, sustaining the charge and reducing Mr. Amason's grade and pay, effective September 5, 2019. *Decision* at 3; J.A. 40–44. Mr. Amason appealed the decision to the Board. *Decision* at 1; J.A. 29–34.

On February 8, 2021, the administrative judge affirmed the Postal Service's decision. *Decision* at 1–20. The administrative judge found that the Postal Service proved its charge by preponderant evidence. *Id.* at 3–6. The administrative judge also found that Mr. Amason failed to establish a due process claim, that there is a nexus between the misconduct and the efficiency of the service, and that the penalty of demotion is reasonable. *Id.* at 17–20. On March 15, 2021, the administrative judge's decision became the Board's final decision. *Id.* at 20.

Mr. Amason appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II.    DISCUSSION

### A.

"We affirm a decision of the Board unless it is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence." *Ford-Clifton v. Dep't of Veterans Affs.*, 661 F.3d 655, 658–59 (Fed. Cir. 2011) (citing 5 U.S.C. § 7703(c)). "We 'must reverse a decision of the Board if it . . . is not in accordance

with the requirements of the Due Process Clause of the Fifth Amendment . . . .'" *Ward v. U.S. Postal Serv.*, 634 F.3d 1274, 1278 (Fed. Cir. 2011) (first alteration in original) (quoting *Blank v. Dep't of the Army*, 247 F.3d 1225, 1228 (Fed. Cir. 2001)).

## B.

On appeal, Mr. Amason argues that the Postal Service's action violated his due process rights, Appellant's Br. 8, 11–12; *see also id.* at 13–23, and that there was no substantial evidence supporting the Board's decision, *id.* at 8, 29–30. We address each argument in turn.

Regarding due process, Mr. Amason argues that neither the Board nor the Postal Service cited to "any written document, including but not limited to any USPS Management Directive, USPS Manual, USPS Rule, USPS Procedure, Regulation in the United States Code of Federal Regulation, or any statute in the United States Code[ ]as the basis for any discipline issued against [him]." *Id.* at 15. We find this argument unpersuasive. The April 2019 Letter cites several provisions of the Employee and Labor Relations Manual as the basis for the reduction in pay and grade, and Mr. Amason does not contest that the Employee and Labor Relations Manual constitutes a part of the Postal Service's regulations. J.A. 38; Appellant's Br. 15; *see also* 39 C.F.R. § 211.2(a)(2) ("The regulations of the Postal Service consist of . . . the Employee and Labor Relations Manual . . . ."). The cited provisions of the Employee and Labor Relations Manual expect employees to "be *loyal* to the United States government and uphold the policies and regulations of the Postal Service," to "discharge their assigned duties *conscientiously* and effectively," and to be "*honest, reliable, trustworthy*, courteous, and of good character and reputation." J.A. 38 (emphases added) (citing Employee and Labor Relations Manual §§ 665.11, 665.13, 665.16). Because Mr. Amason was charged with instructing his staff to make misrepresentations as to the status of

packages, J.A. 36, an action that is inherently dishonest, the cited sections of the Employee and Labor Relations Manual provided sufficient notice. *See* J.A. 38 (noting the lack of integrity in Mr. Amason's actions). Therefore, the April 2019 Letter, citing relevant provisions of the Employee and Labor Relations Manual, satisfied the due process requirement that "an employee be given notice of the charges against him in sufficient detail to allow the employee to make an informed reply." *Do v. Dep't of Hous. & Urb. Dev.*, 913 F.3d 1089, 1094 (Fed. Cir. 2019) (citations omitted).

Furthermore, even if we take as true Mr. Amason's allegation that the Postal Service had no scanning practices and procedures at the time of his conduct, Appellant's Br. 17, Mr. Amason still owed a duty to be honest, reliable, and trustworthy under the provisions of the Employee and Labor Relations Manual discussed above. Inappropriate scans of packages violate this duty. Accordingly, we conclude that the Board did not err and that Mr. Amason has failed to establish a due process violation.

C.

Mr. Amason also argues that the Board's findings on nexus and the reasonableness of the penalty are not supported by substantial evidence. *See* Appellant's Br. 29–30; *see also id.* at 23–28. We disagree.

Regarding nexus, the Board found the nexus "clear where, as here, the agency has established by preponderant evidence that the appellant, as Postmaster, instructed Postal employees to misrepresent the status of mail through improper scanning." *Decision* at 18. Because Mr. Amason acted inappropriately in his capacity as a Postmaster, there was substantial evidence to support a finding of nexus because there was a "direct connection" between the efficiency of the service and Mr. Amason's misconduct. *Parker v. U.S. Postal Serv.*, 819 F.2d 1113, 1116 (Fed. Cir. 1987). The nexus between the "falsification of government

records"—like Post Service's records of the status of packages—and the "efficiency of the service [is] 'obvious on the face of the facts.'" *Gonzales v. Def. Logistics Agency*, 772 F.2d 887, 889 (Fed. Cir. 1985) (quoting *Phillips v. Bergland*, 586 F.2d 1007, 1011 (4th Cir. 1978) and citing *Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1539 & n.3 (Fed. Cir. 1984)). Whether Mr. Amason violated any criminal statute or engaged in any other egregious conduct is irrelevant. *See* Appellant's Br. 26. The record shows that Mr. Amason's actions negatively impacted the efficiency of the Postal Service by resulting in numerous customer complaints. J.A. 96–152. Therefore, we find the Board's finding on nexus to be supported by substantial evidence.

We further conclude that substantial evidence supports the Board's finding that the penalty of demotion is reasonable. *Decision* at 18–20. The August 2019 Decision Letter and Mr. Kelly's declaration include thorough analyses of the *Douglas* factors and support this finding. *See* J.A. 41–42; J.A. 182–85. Mr. Amason argues that his penalty is inconsistent with the penalty imposed on others, citing to one example when another postmaster in Texas was given a letter of reprimand in lieu of a demotion under a similar charge. Appellant's Br. 30; *see also* J.A. 550–53. However, in that case, only about 100 packages were found to be mis-scanned, and none of the employees identified the reprimanded postmaster as the official that gave them the instruction to perform improper scans. J.A. 550–51. Here, over 1,000 packages were improperly scanned, *Decision* at 2; J.A. 89–91, and several employees stated that Mr. Amason instructed them to make the improper scans on multiple occasions. *See, e.g.*, J.A. 81–82; J.A. 180–81; J.A. 84; J.A. 87. Because the other postmaster's conduct was not analogous, his reprimand does not establish that Mr. Amason received a penalty inconsistent with other employees in similar circumstances.

Mr. Amason also contends that the offense was "very minor" compared to the amount of mail that WPO

processes and delivers and that the Postal Service has elsewhere conceded that the improper scanning resulted in nothing more than "an inconvenience." Appellant's Br. 27, 30. The Board rejected this argument, instead finding that Mr. Kelly properly found Mr. Amason's misconduct to be serious, noting that it violated customers' trust and was at odds with his obligation as a postmaster. *See Decision* at 19–20; J.A. 41 ¶ 2; J.A. 183 ¶ 9a. The Board also explained that improper scans resulted in numerous customer complaints regarding inaccurate tracking information and confusion as to the location of their mail. *Decision* at 19–20; *see also* J.A. 41 ¶ 7; J.A. 184 ¶ 9c; J.A. 96–152. We see no error in the Board's analysis.

Mr. Amason additionally argues that Mr. Kelly's finding of no hope of rehabilitation was not supported by substantial evidence, citing his long tenure as a Postal Service employee without prior discipline. Appellant's Br. 30; *see also id.* at 26–27. But the Board concluded that Mr. Kelly considered these factors but found them outweighed by the seriousness of Mr. Amason's conduct, particularly in light of his supervisory role. *Decision* at 19; J.A. 41 ¶¶ 3–4; J.A. 184–85 ¶¶ 9d, 9i. Here too, we do not see any error in the Board's analysis.

We "will not disturb a choice of penalty within the agency's discretion unless the severity of the agency's action appears totally unwarranted in light of all the factors." *Mings v. Dep't of Just.*, 813 F.2d 384, 390 (Fed. Cir. 1987). Because substantial evidence supports the Board's finding that the penalty is reasonable, we will not disturb it.

## III.  CONCLUSION

We have considered Mr. Amason's remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm* the Board's decision.

## AFFIRMED